In re the MARRIAGE OF Edward Dean
ROBERTS and Jacqueline Sue
Roberts.

Edward Dean Roberts, Petitioner–
Respondent,

v.

Jacqueline Sue Roberts, Respondent–
Respondent,

v.

William A. Wear, Jr., Guardian
Ad Litem–Appellant.

No. 22522.

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 1999.

James M. Sharp, Wear & Sharp, Springfield, for Appellant.

Royal M. Miller, Ted Von Willer, Springfield, for Respondents.

PHILLIP R. GARRISON, Chief Judge.

The Circuit Court of Greene County dissolved the marriage of Edward Dean Roberts ("Father") and Jacqueline Sue Roberts ("Mother") on June 25, 1991. Pursuant to the decree, Mother was awarded primary custody of their minor son, and Father was awarded visitation rights with some restrictions. On August 11, 1993, Father filed a "Motion to Modify the Decree of Dissolution of Marriage" seeking primary custody of their minor son or, in the alternative, unrestricted reasonable visitation rights. Father then filed an "Amended Motion to Modify" on January 27, 1995, alleging *inter alia* that on numerous occasions when he received their son from Mother, there were bruises on him such as handprints on his back, bruises on his upper arm as if he had been grabbed, and a black eye. On October 27, 1994, Mother filed a "Motion for Contempt" against Father alleging that he had violated the restrictions applicable to his visitation rights with the child. She also filed a "Motion for Mental Examination" of Father to determine the appropriateness of his visitation with the child and a "Motion to Terminate Visitation Rights" of Father.

On December 16, 1994, the court found that allegations of abuse and neglect were before the court and appointed attorney Galen Thomas to serve as guardian ad litem for the minor child. At the same time, the court ordered each party to deposit $250 with the clerk as security for the payment of guardian ad litem fees. On May 2, 1995, the court allowed Mr. Thomas to withdraw as guardian ad litem and appointed attorney William A. Wear, Jr. ("Appellant" or "guardian ad litem") as his replacement. Appellant entered his appearance in the case as guardian ad litem on June 9, 1995. On December 4, 1995, Appellant filed a "Motion to Release Funds" from the deposit for guardian ad litem fees which was sustained on December 14, 1995. On March 14, 1996, a "Motion for Additional Deposit for Guardian Ad Litem Fees" was filed, but it apparently was never heard. On April 4, 1997, Appellant filed a "Motion for Guardian Ad Litem Fees" and gave notice that the motion would be heard on April 16, 1997. On April 14, 1997, however, Father filed a voluntary dismissal of his "Amended Motion to Modify," and on April 15, 1997, Mother filed a voluntary dismissal of her "Counter–Motion to Modify." [1] The court heard arguments regarding Appellant's guardian ad litem fees on April 16, 1997, and took the issue under advisement. On August 5, 1997, the trial court denied the request for guardian ad litem fees finding that, based on *Givens v. Warren*, 905 S.W.2d 130 (Mo.App. E.D.1995), it lacked jurisdiction to award such fees after April 15, 1997, the date on which Mother filed the voluntary dismissal of her "Counter–Motion to Modify." [2] As indi-

---

1. The record does not contain a "Counter–Motion to Modify" filed by Mother. We assume that the voluntary dismissal of the "Counter–Motion to Modify" was intended as a voluntary dismissal of Mother's "Motion to Terminate Visitation Rights" of Father.

2. The court also found that Mother's "Motion for Contempt" was never properly before the court,

cated, Father had previously dismissed his "Amended Motion to Modify." Appellant now appeals the trial court's order. We reverse.

*Givens* involved a mother's suit for a declaration of paternity against the alleged father (the "defendant"). Pursuant to the defendant's motion to compel paternity blood testing, the court ordered the parties to submit to blood tests. After the tests excluded him as the father, the defendant filed a motion to dismiss the petition and to recover his attorney fees and costs. The mother dismissed the suit, however, before the motion was heard. Subsequently, the trial court sustained a motion filed by the defendant to reopen the case. It ordered the mother to pay the defendant one-half of his costs and to reimburse him for his costs incurred for the blood tests. It then sustained the defendant's motion to dismiss the petition. The appellate court found that the trial court lost jurisdiction as of the date of the original dismissal except that, pursuant to § 514.170, RSMo,[3] it had jurisdiction to "issue an order as an administrative act in connection with any appropriate orders regarding the assessment of costs." *Id.* at 132. In so finding, the court held that a trial court retains jurisdiction with respect to costs specifically taxable against a plaintiff under § 514.170. The court described the costs which were taxable pursuant to § 514.170 as those which are fixed, do not require judicial investigation or determination, and are capable of being assessed as a ministerial act. *Id.* at 133.

In *Liberman v. Liberman*, 844 S.W.2d 79 (Mo.App. E.D.1992), the issue was whether the trial court could sustain a husband's motion for attorney fees that was filed after the wife voluntarily dismissed her petition prior to the introduction of any evidence. The appellate court noted that when a plaintiff dismisses a suit prior to the introduction of evidence, while the dismissal is effective

without court order, "the court may enter an order with any appropriate order regarding assessment of costs." *Id.* at 80. It held, however, that attorney fees do not qualify as such "costs," and thus the trial court lost jurisdiction to rule on the motion when the plaintiff dismissed her petition. *Id.* at 81.

*Fisher v. Spray Planes, Inc.,* 814 S.W.2d 628 (Mo.App. E.D.1991), involved a motion for costs that was filed by the defendants after the plaintiffs voluntarily dismissed their case. The costs involved were deposition expenses which were taxed by the clerk after the suit was dismissed. The appellate court held that the costs were appropriately assessed, relying in part on § 514.170. The court noted that the costs involved were "definite, fixed by statute and specifically taxable against plaintiff pursuant to § 514.170," and that "[n]o judicial investigation or determination was involved which would have required a court order taxing costs." *Id.* at 631. Plaintiffs argued that the trial court lacked jurisdiction to tax the costs because they had dismissed the case. The court disagreed, saying that the issue involved "taxing court costs pursuant to law when the case is voluntarily dismissed," and "[b]ecause the allocation of court costs does not require judicial investigation and determination, the trial court does not lose jurisdiction to issue an execution." *Id.* at 632. In support, the court said that "[t]he amount of the allowance is not a discretionary matter to be determined by the court upon judicial investigation, and is a matter of ministerial duty of the clerk." *Id.*

Another case standing for the proposition that a trial court has jurisdiction to award some costs after a voluntary dismissal by a plaintiff is *Gore v. St. Anthony's Medical Center,* 866 S.W.2d 871 (Mo.App. E.D.1993). In that case, the plaintiff dismissed his petition before the introduction of evidence without prejudice "at Plaintiffs' [sic] costs."

and thus it was not sufficient to retain the court's jurisdiction of the case for the purpose of awarding guardian ad litem fees after Mother and Father's voluntary dismissals. Furthermore, Mother's attorney admitted to the court in a letter dated April 21, 1997, that Mother "had abandoned [her Motion for Contempt] a couple of years ago."

3. Section 514.170, RSMo 1994, provides:

Upon the plaintiff dismissing his suit, or defendant dismissing the same for want of prosecution, the defendant shall recover against the plaintiff his costs; and in all other cases it shall be in the discretion of the court to award costs or not, except in those cases in which a different provision is made by law.

Thereafter, the trial court sustained a motion for costs filed by the defendants, and ordered the plaintiff to pay all of the defendants' deposition and other costs amounting to over $30,000. The appellate court noted § 514.170, but held that it permits no trial court discretion in the taxing of costs upon a voluntary dismissal by a plaintiff. *Id.* at 872–73. It concluded, however, that because deposition costs are to be taxed as other costs pursuant to Rule 57.10, and § 514.170 provides that defendants shall recover costs upon a plaintiff's voluntary dismissal of the suit, the trial court did not err in granting defendants' motion for costs.

*Quality Business Accessories, Inc. v. National Business Products, Inc.*, 880 S.W.2d 333 (Mo.App. E.D.1994), involved the fees of a commissioner appointed to supervise discovery in the case. The trial court appointed the commissioner "with the expenses to be advanced equally by the parties and to be taxed as costs." *Id.* at 334. After the court lost jurisdiction, it entered an order requiring each party to pay one-half of the commissioner's fees, and ordered the plaintiff to pay any remaining costs. The appellate court held that the costs were awarded pursuant to § 514.170. In doing so, it held that the matter of the commissioner's fees was fixed by the previous ruling that one-half of such fees would be assessed against each of the parties. *Id.* at 335. In sustaining the trial court's ruling that each party was to pay one-half of the commissioner's fees, the court said that the amount awarded for those fees corresponded to the fees which the commissioner submitted to the trial court, and the order mandating that each party pay one-half of the assessed amount conformed to the trial court's previous ruling when it appointed the commissioner. *Id.* The court concluded, therefore, that the order was a ministerial act, requiring no judicial investigation or determination. *Id.*

Neither of the parties to this case cite authority specifically involving the payment of guardian ad litem fees after a voluntary dismissal by both parties prior to the introduction of any evidence, and our research has revealed no cases involving these facts. As mentioned, the trial court in this case concluded that it lacked jurisdiction to award such fees after the parties voluntarily dismissed the motions under which they sought relief.

Jurisdiction is "the right to adjudicate concerning the subject-matter in the given case." *Steele v. Steele*, 978 S.W.2d 835, 837 (Mo.App. W.D.1998). "Jurisdiction" is a loosely employed term but generally it includes three kinds of authority, over the subject matter, over the person, and to render the order given. *In re Marriage of Neal*, 699 S.W.2d 92, 94 (Mo.App.S.D.1985). "Jurisdiction" is often used ambiguously; in its stricter sense, it means judicial authority over the subject matter and parties; in its broader sense, it includes the power to grant specific relief in cases within such authority. *Id.*

This case is most closely akin to the *Quality Business Accessories* case. Here, the trial court, upon appointing a guardian ad litem, ordered the parties to deposit $250 each with the clerk "as security for payment of [the guardian ad litem's] fee." Not unlike *Quality Business Accessories*, this amounted to a preliminary order indicating that each party would be expected to pay one-half of the fees incurred by the guardian ad litem.

The cases cited earlier in this opinion stand, to varying degrees, for the proposition that the trial court, after a voluntary dismissal, lacks jurisdiction except to award costs to a party pursuant to § 514.170 which does not permit the exercise of discretion. When Appellant filed his motion for guardian ad litem fees prior to the dismissals by Father and Mother in this case, however, the version of § 452.423.4 in effect provided:

The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings, or may tax such fees as costs to be paid by the party against whom costs are taxed, or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. Such final judgment shall be enforceable

against the parties in accordance with chapter 513, R.S.Mo.[4]

The jurisdiction of the circuit court is defined by the statutory provisions and the letter of the law is the limit of its power. *Wells v. Noldon,* 679 S.W.2d 889, 891 (Mo.App. E.D. 1984). The version of § 452.423.4 in effect when the issue of guardian ad litem fees was presented to the trial court mandated the awarding of such fees. The requirement that the trial court award a "reasonable fee . . . to be set by the court" indicated that the court was to utilize discretion in doing so. The statute specifically permitted the exercise of discretion in determining whether to award the fees as part of the costs or as a judgment, and against parties or from public funds. There is no indication in the statute that the legislature intended that the trial court would lose jurisdiction to award such fees upon the voluntary dismissal by a party seeking relief. Likewise, there is no indication that the legislature intended that the parties could defeat a claim for guardian ad litem fees simply by dismissing their claims before a motion for such fees could be heard and determined.

Unlike *Givens,* relied on by the trial court, the issue here involves the fees of a guardian ad litem, whose services were made necessary by the allegations of child abuse. Additionally, a significant distinction is that here, there was in force when this issue was presented to the trial court, a statute that required the awarding of such fees. The conclusion of the trial court that it did not have jurisdiction to award fees to the guardian ad litem constituted an erroneous declaration of the law. Accordingly, the judgment of the trial court that it lacked jurisdiction to award guardian ad litem fees is reversed, and the case is remanded to the trial court for further proceedings in accordance with the version of § 452.423.4 in effect when the issue of guardian ad litem fees was presented to the trial court.

SHRUM, P.J. and MONTGOMERY, J., concur.

4. Effective July 1, 1997, § 452.423.4 was amended to read:

The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. Such final judgment shall be enforceable against the parties in accordance with chapter 513, R.S.Mo.